Monte K. **SIEBERNS**, Plaintiff–Appellant,

v.

**WAL–MART STORES, INC.,**
Defendant–Appellee.

No. 96–4199.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1997.

Decided Sept. 11, 1997.

---

John C. Theisen (argued), Holly A. Brady, Gallucci, Hopkins & Theisen, Fort Wayne, IN, for Plaintiff–Appellant.

Maria C. Campo, Baker, & Daniels, Fort Wayne, IN, John T. Neighbours (argued), Edward Edison Hollis, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before BAUER, WOOD, Jr., and MANION, Circuit Judges.

MANION, Circuit Judge.

Monte Sieberns, who is blind, applied for a cashier/sales associate position at Wal–Mart. When he did not get the job he sued in federal court claiming that Wal–Mart discriminated against him in violation of the Americans with Disabilities Act ("ADA"). The district court granted Wal–Mart summary judgment and Sieberns appeals. We affirm.

## I. Background

On October 18, 1995, Monte Sieberns, who is blind, applied to the Huntington, Indiana, Wal–Mart for a job as a cashier/sales associate in the Electronics Department. He completed an application and the next day was interviewed by the personnel manager, Sandra Bromfield. Following the interview, Bromfield met with Lana McQuitty, the store manager, to discuss Sieberns' application. The two reviewed the "Wal–Mart Stores' Matrix of Essential Functions." This matrix listed functions Wal–Mart believed essential to the position of cashier/sales associate. Some of these essential functions involved checking out customer purchases, customer assistance, flagging merchandise (which required the employee to write and secure price information on signs by merchandise), merchandise stocking (which required the employee to place merchandise on the correct counter or in the correct space according to the label or instructions), zone defense (which required the employee to straighten merchandise and clean the merchandise area), changing prices (which required the employee to use mark-up or mark-down instructions to change price labels from the current price to the new price on designated merchandise, and to record as needed), and scanning the merchandise. In the Electronics Department, the location of the sales associate position in question, there was an extensive selection of merchandise that required close scrutiny for price distinctions and variations for products, and throughout the store more than 44,000 items were available. After reviewing the matrix and the duties in the Electronics Department, McQuitty and Bromfield determined that Sieberns could not perform the essential functions of the cashier/sales associate position.

Before contacting Sieberns with the bad news, however, Bromfield and McQuitty discussed the possibility of finding another position at Wal–Mart for Sieberns. They considered the positions of people greeter and telephone operator, even though those positions were currently filled. After some extensive evaluation, Wal–Mart determined that there was no position presently available for which Sieberns could perform the essential job functions. Then Bromfield notified Sieberns of the her attempts to locate a position for him and her inability to offer him a job.

Believing that disability discrimination was the real reason for Wal–Mart's rejection, Sieberns filed suit under the Americans with Disabilities Act. Following discovery, Wal–Mart moved for summary judgment, claiming that Sieberns failed to present sufficient evidence that he was a "qualified individual with a disability" under the ADA. The district court agreed and granted Wal–Mart summary judgment. Sieberns appeals.

## II. Analysis

We review a district court decision granting summary judgment de novo. *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1282 (7th Cir.1996). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Sieberns' suit is based on the ADA, the pertinent part of which provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

"Discrimination" as used in the ADA encompasses two distinct types of discrimination. First, it means treating "a qualified individual with a disability" differently

because of the disability, i.e., disparate treatment. *See Bultemeyer,* 100 F.3d at 1283 (a claim "that other employees who were not disabled were treated more favorably . . . . [is a] claim for disparate treatment, . . . ."). A disparate treatment claim under the ADA—like disparate treatment claims brought under other federal anti-discrimination statutes—may be proved either directly, or indirectly using the *McDonnell Douglas* [1] burden-shifting method. *Id.* Additionally, because the ADA defines discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . ," 42 U.S.C. § 12112(b)(5)(A), a separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodation.").

■ No matter the type of discrimination alleged-either disparate treatment or failure to provide a reasonable accommodation—a plaintiff must establish first that he was "a qualified individual with a disability." *Bombard,* 92 F.3d at 563 ("The ADA proscribes discrimination against only 'qualified individual[s] with a disability.'") (quoting 42 U.S.C. § 12112(a)); *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 525 (7th Cir.1996) ("Recovery under the ADA also requires a plaintiff to establish she is a qualified individual with a disability."). "A 'qualified individual with a disability' is defined, in relevant part, as: 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or de-

sires.'" *Bombard,* 92 F.3d at 563 (quoting 42 U.S.C. § 12111(9)).

In this case, the district court granted Wal–Mart summary judgment, concluding that Sieberns did not present sufficient evidence that he was "a qualified individual with a disability." On appeal, Sieberns argues that had Wal–Mart provided him a reasonable accommodation he could have performed the job of telephone operator, and that Wal–Mart not only failed to provide a reasonable accommodation, but also refused to hire him because he was blind.[2]

■ Sieberns skips an essential point—he did not apply for a telephone operator position nor was such a job even available when he applied. He applied for and was denied a position as a clerk/sales associate in the Electronics Department. Sieberns concedes that he could not perform this job with or without an accommodation.[3] This is a very reasonable concession. That job required the employee to flag, stock, and price many types of highly expensive merchandise identified by a Universal Product Code which was displayed on each individual product, as well as the corresponding Wal–Mart shelf. McQuitty concluded that to accommodate him they would have to hire someone else to help perform some duties. That clearly was beyond a reasonable accommodation. Because Sieberns admits that he could not perform the clerk/sales associate position with or without a reasonable accommodation, he is not a "qualified individual with a disability," and cannot prevail on either a disparate treatment or reasonable accommodation claim. *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524 (7th Cir.1996) ("The plaintiff bears the burden of proof on this issue; she must be able to show that she is a

---

1. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

2. On appeal, Sieberns also claims that he should be allowed to proceed to trial on a disparate impact theory of discrimination based on statements made by Wal–Mart indicating that theft detection was an essential job function of every position. Because Sieberns did not allege a claim of disparate impact and failed to present the requisite statistical proof of disparate impact, this argument must be rejected.

3. Sieberns admitted in his deposition that he could not perform the essential functions of the cashier/sales associate position with or without reasonable accommodations. Also, in his reply brief, Sieberns states that a "great amount of Wal–Mart's brief is devoted to its emphasis on the fact that Sieberns admitted that he could not perform the essential functions of the cashier/sales associate position. However, Sieberns conceded this point in his Response to Wal–Mart's Motion for Summary Judgment."

'qualified individual with a disability' in order to successfully prosecute an ADA claim.") (quoting 42 U.S.C. § 12112(a)).

■ Given that Sieberns could not perform the available job that he applied for, the claim that he could perform the job of "telephone operator" has no bearing. This is a position that Wal–Mart had considered creating for Sieberns, but which it decided against creating after contacting the AT & T representative and learning that the phone system could not be modified to accommodate Sieberns. In short, Wal–Mart was willing to go the extra mile to find a slot for Sieberns, but backed off when it encountered logistical complications with the phone system. Nevertheless, Sieberns spends a great deal of time on this sidetrack disputing the accuracy of AT & T's alleged statement. But whether or not the phone could be modified is irrelevant because there was no opening for a position as telephone operator at Wal–Mart in the first place: "[A]n employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a 'new' position for the disabled employee." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996). Because there was no position at Wal–Mart for a telephone operator, and no opening in other positions for which Sieberns claims to be qualified, he cannot advance a claim under the ADA.[4] *See Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir.1996) (plaintiff could not satisfy burden of proof that he was "qualified" under the ADA, where "it is undisputed that given his physical restrictions, no other union positions which [plaintiff] could have performed were available at Mine No. 25").

Sieberns also complains that Wal–Mart failed to engage in the interactive process that the ADA contemplates. Specifically he objects because Wal–Mart did not review with him the "Wal–Mart Stores' Matrix of Essential Functions," and as evidence of a violation Sieberns points to store policy which indicates that the matrix should be reviewed with applicants. Sieberns also protests Wal–Mart's decision (made without consulting him) that he could not perform certain jobs.

■ We do not find Wal–Mart's behavior in this case objectionable. The interactive process the ADA foresees is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought. In this case, Wal–Mart knew of no accommodation for the clerk/sales position in the Electronics Department that could help Sieberns, nor did Sieberns present any proposed accommodation for that job. Without such a proposal, the interactive process would not even begin.

Had Wal–Mart simply rejected Sieberns' application because he acknowledged that he could not perform the job he applied for, there probably would have been no dispute. This claim materialized when the personnel manager and the store manager looked into additional job possibilities not contemplated or even available when Sieberns applied. Employers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not work out. Sieberns obviously impressed his interviewers, causing them to explore other possible opportunities. But that exploration occurred outside the perimeter of his application and the job opening regulated by the ADA. *See Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 545 (7th Cir.1995) ("And if the employer ... bends over backwards to accommodate a disabled worker—goes further than the law requires—... it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.").

In sum, Sieberns was not qualified to be a cashier/sales associate in the Electronics Department because no reasonable accommodation would have enabled him to do that job. And while he now believes he should have been hired as a telephone operator, there

---

4. Because Sieberns has not presented sufficient evidence that he was "a qualified individual with a disability," his claim cannot succeed and therefore we need not reach the issue of whether he presented sufficient direct or indirect evidence of discrimination.

was no opening in that position. Against this backdrop, the district court correctly concluded that Sieberns had no claim under the Americans with Disabilities Act. We AFFIRM.