In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1771

Donald Rehling,

Plaintiff-Appellant,

v.

The City of Chicago,
a municipal corporation,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 6467--Robert W. Gettleman, Judge.


Argued January 10, 2000--Decided March 21, 2000


Before Flaum, Manion, and Evans, Circuit Judges.

Flaum, Circuit Judge.  Donald Rehling appeals the district court's grant of partial summary judgment/1 to the City of Chicago (the "City"), alleging that the district court erred in determining that there was no genuine dispute as to whether the City offered Rehling a reasonable accommodation/2 under the Americans With Disabilities Act ("ADA"), 42 U.S.C. sec. 12101 et seq. Rehling also appeals the final judgment the district court entered against him following a jury verdict in favor of the City on his disparate treatment ADA claim,/3 arguing that the district court made a series of erroneous evidentiary rulings. For the reasons stated herein, we affirm the decision of the district court.

I.  Facts

Donald Rehling, the appellant, is a police officer with the Chicago Police Department (the "CPD"). He is currently on a leave of absence and receives a disability pension as the result of a December 5, 1994 accident in which he was struck by an automobile. As a consequence of the injuries sustained in that accident, Rehling had his left leg amputated just above the knee.

On December 1, 1995, following a long period of

medical leave, Rehling submitted a request that he be returned to work on limited duty status. Rehling specifically requested to return to work in District 16, the police district to which he had been assigned prior to his accident. At this time the CPD's Medical Services Section contacted Thomas O'Connor, the District Secretary in District 16, who indicated that there was a position for Rehling in that district. Although Rehling was cleared to return to restricted duty by Jean Blake, the Medical Administrator of the Medical Services Section, both parties agree that Rehling was unable to function in his previous position as an officer in a patrol car./4

Rehling reported for duty at District 16 on December 7, 1995. Upon his return, Harry Tannehill, the Commander of the 16th Police District, assigned Rehling to assist with processing citations. Processing citations is a civilian position, and under the police department's collective bargaining agreement it may not be filled by a police officer. Furthermore, although Rehling was initially assigned to help in processing citations, there was no position in District 16 for an assistant to the citations clerk. The City asserts that there were no other desk jobs available in District 16 during December 1995.

On December 8, 1995, Rehling was informed that he could no longer work in District 16. Commander Tannehill testified that he had called Deputy Chief Frank Radke about finding an assignment for Rehling because there were no desk jobs available in District 16. Rehling disputes that it was Tannehill who made the decision to transfer him out of District 16. According to Rehling, that decision came from the General Counsel to the Superintendent of Police, Donald Zoufal, through Chief of Patrol John Cadogan. When Medical Administrator Blake called Zoufal about Rehling's change of assignment, Zoufal stated that he made the decision to transfer Rehling because an officer using a walker was not the image the police department wanted to convey to the public.

Rehling testified that he called Cadogan about his reassignment from District 16 and was informed that the decision had been made by Zoufal. Rehling then contacted Zoufal to discuss the matter and was allegedly told by Zoufal that he could not work in District 16 because of his disability and because his return to work would set a precedent for other disabled officers who desired to work in police districts. In addition, the head of the Fraternal Order of Police, William Nolan, stated that when he called Zoufal about Rehling's transfer, Zoufal responded that the CPD could not have a "cripple" in public view

because of liability concerns.

Commander Tannehill informed Rehling of two possible reassignments, one working the midnight shift at O'Hare Airport and one in the Alternative Response Unit. During his deposition, Rehling stated that he did not want the O'Hare assignment because of concerns about the availability of parking and the hours. This assignment was later withdrawn as an option because it was determined that public transportation did not stop close enough to O'Hare to accommodate Rehling. At the time this offered position was withdrawn, Rehling alleges that he was "leaning toward" taking it.

Rehling admits that he could perform the duties of the Alternative Response Unit, whose members take incoming reports and determine whether it is necessary to dispatch a squad car to the scene. However, Rehling also testified that he did not know how he would get to work at that unit. Rehling stated that he did not feel comfortable accepting a ride from another officer that the department had arranged for him, that the Chicago Transit Authority's disability rider program was unreliable, and that he was not able to take public transportation.

Despite Rehling's concerns about transportation, Chief of Patrol Cadogan submitted a request to have Rehling detailed to the Alternative Response Unit. That request was granted, and Rehling was given until December 20, 1995 to report for duty. Instead of reporting, Rehling used his accumulated compensatory and furlough time and then applied for a disability pension.

On October 3, 1996, Rehling filed suit against the City under the ADA. In his complaint, Rehling alleged that the City had discriminated against him on the basis of his disability by not allowing him to work as a citation clerk in District 16. In addition, Rehling asserted that the City had failed to provide him a reasonable accommodation.

On December 3, 1997, the City filed a motion for summary judgment and a memorandum of law in support of that motion. The district court denied that motion, but held that Rehling had effectively abandoned his reasonable accommodation claim because he "d[id] not really dispute that either of the two positions [offered to him] would amount to a reasonable accommodation under the ADA." The district court further held that Rehling still had a disparate treatment claim based on his allegations that the City transferred him out of District 16 because of his disability, and the case proceeded to

trial on that theory. The City filed a motion seeking to bar Rehling from relitigating his reasonable accommodation claim at trial, and that motion was granted.

Prior to trial, the City also filed a motion in limine to bar evidence of the substance of conversations between Zoufal, the CPD's General Counsel, and ranking members of the CPD, on the ground that the conversations were protected by the attorney-client privilege. The district court held an in camera hearing on the attorney-client privilege issue on August 26, 1998, and Zoufal was questioned about the conversations the City asserted were protected. The district court granted the City's motion to bar evidence of the substance of conversations between Zoufal and members of the CPD. However, the motion specifically permitted Rehling and Nolan to testify as to their conversations with Zoufal.

On March 2, 1999, trial began on Rehling's disparate treatment claim. On March 4, 1999, the jury returned a verdict for the City. Rehling now appeals the district court's grant of partial summary judgment as to the issue of reasonable accommodation, as well as the district court's entry of final judgment for the City following a jury verdict in favor of the City on Rehling's disparate treatment claim.

II.  Analysis
A.

Rehling first challenges the district court's grant of partial summary judgment to the the City as to the reasonable accommodation issue. In ruling for the City on this point, the court found that Rehling had effectively abandoned his reasonable accommodation claim because he did not dispute that the alternative positions offered to him were reasonable accommodations. The district court accordingly limited the issues to be presented to the jury to those of disparate treatment. We review the district court's decision in this regard as a grant of partial summary judgment to the City and subject it to de novo review. See Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1014 (7th Cir. 1996).

1.  The Availability of a Position in District 16

Rehling first argues that the district court erred in granting the City partial summary judgment as to the reasonable accommodation issue because there was a genuine dispute about the availability of a position in District 16. According to Rehling, a jury should have been allowed to determine whether a position was in fact available in District 16, and whether a

reasonable accommodation in an alternative position was necessary. In support of this argument, Rehling testified that Commander Donald Bergerin, his District Commander at the time of his injury, told him that there would be a place for him in District 16, and that District 16 Secretary O'Connor told the Medical Services Section that there was a position available for Rehling in District 16. In addition, Rehling notes that he was initially placed in District 16 and was permitted to do citation work by District Commander Tannehill. Rehling argues that this evidence was sufficient to overcome the City's motion for summary judgment.

Rehling concedes that he was not able to return to work in his previous capacity as an officer in a patrol car, but he correctly argues that "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of [his] current position." Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996); see 42 U.S.C. sec. 12112(b)(5)(A), (B). However, "[t]his duty to reassign a disabled employee has limits. The employer need only transfer the employee to a position for which the employee is otherwise qualified." Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 633 (7th Cir. 1998) (citing Cochrum v. Old Ben Coal Co., 102 F.3d 908, 913 (7th Cir. 1996)); Gile, 95 F.3d at 499. In this case Rehling requested an accommodation, and he was offered a choice between a position working the midnight shift at the airport and a position at the Alternative Response Unit. See 42 U.S.C. sec. 12111(9)(B) (noting that assignment to a vacant position can constitute a reasonable accommodation). While Rehling does not contest the suitability of the accommodations made, he does suggest that those accommodations would be rendered unreasonable to the extent he could show the availability of a position in District 16.

It is well-established that an employer is obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer. See Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699 (7th Cir. 1998); Gile, 95 F.3d at 499; Schmidt v. Methodist Hospital, 89 F.3d 342, 344-45 (7th Cir. 1996). Accordingly, an employee who requests a transfer cannot dictate the employer's choice of alternative positions. See Gile, 95 F.3d at 499 ("[W]hen an employee requests a transfer as reasonable accommodation and the employer offers reasonable accommodation, which the employee then refuses, the employer cannot be held liable for failing to reasonably accommodate the employee by transferring him to another position."); see also Webster v.

Methodist Occupational Health Centers, Inc., 141 F.3d 1236, 1238 (7th Cir. 1998). However, this Court has also held that "[d]etermining whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request." Feliberty, M.D. v. Kemper Corp., 98 F.3d 274, 280 (7th Cir. 1996). Under these holdings, Rehling's request to remain in District 16 was relevant to, but not dispositive of, his reasonable accommodation claim.

If Rehling were able to show the availability of a position in District 16, we would agree that there was an issue of fact as to whether the CPD adequately acceded to Rehling's request. However, in this case that issue of fact is not material because Rehling has failed to demonstrate that there was an available position in District 16. Rehling does not indicate which positions were available to him in District 16, and states only that his initial placement as a citations clerk demonstrates that the City could have placed him in that position permanently. However, there is no evidence that the citations clerk position in which Rehling was placed was anything but temporary. See McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1165 (7th Cir. 1997) ("Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position."); see also Malabara, 149 F.3d at 697 (stating that "the ADA does not require that employers convert temporary work assignments into permanent positions"). To the contrary, the relevant collective bargaining agreement provides that the citations clerk jobs are to be filled by civilian employees only. See Old Ben Coal, 102 F.3d at 912-13 ("An employer is not required to violate the provisions of a collective bargaining agreement to reassign a disabled employee pursuant to the ADA.") (citing Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1051 (7th Cir. 1996)). Furthermore, the evidence presented by the City showed that there were no non-civilian desk positions available in District 16 when Rehling returned to work in December 1995. Because Rehling failed to identify an available position in District 16 for which he was qualified, the district court was correct to grant the City summary judgment on Rehling's reasonable accommodation claim. See Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 678 (7th Cir. 1998) (stating that the "employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which she is qualified") (emphasis added) (citing 42 U.S.C. sec. 12111(9)(B)); Libbey-Owens-Ford Co., 132 F.3d at 1165 (stating that a plaintiff has the burden of showing that a vacant position exists for which he is

qualified).

2. The Interactive Exchange

Rehling next argues that the district court erred in granting the City summary judgment on the reasonable accommodation claim because there was a disputed issue of material fact as to whether the City engaged in the proper kind of interactive exchange regarding Rehling's placement. The federal regulations implementing the ADA state that "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. sec. 1630.2(o)(3). The regulations further provide that "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. pt. 1630, app.; see Beck v. University of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996). According to Rehling, the City violated the ADA when it failed to engage in a good faith attempt to include Rehling in the process of determining the proper reasonable accommodation.

As we recognized in Beck, the ADA does envision a flexible, interactive process by which the employer and employee determine the appropriate reasonable accommodation, see Beck, 75 F.3d at 1135; Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996), and we have stated that this process requires "a great deal of communication." Bultemeyer v. Fort Wayne Comm. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996). However, we have also stated that "[t]he interactive process the ADA foresees is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir. 1997). Because the interactive process is not an end in itself, it is not sufficient for Rehling to show that the City failed to engage in an interactive process or that it caused the interactive process to break down. Rather, Rehling must show that the result of the inadequate interactive process was the failure of the City to fulfill its role in "determining what specific actions must be taken by an employer" in order to provide the qualified individual a reasonable accommodation. Beck, 75 F.3d at 1135.

Although the interactive process is not an end itself, we recognize that this Court has

previously upheld judgments against employers, or precluded summary judgment for employers, in cases where there was an issue as to whether the employer engaged in an appropriate interactive process or caused such a process to breakdown. See, e.g., Haschmann v. Time Warner Entertainment Co., 151 F.3d 591 (7th Cir. 1998); Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 699-700 (7th Cir. 1998); Baert, 149 F.3d at 633-34; Bultemeyer, 100 F.3d at 1285-87. However, those cases did not involve reasonable accommodation claims based solely on the employer's failure to engage in an interactive process, nor did those cases hold that the breakdown of an interactive process could render an otherwise reasonable accommodation unreasonable. Rather, in those cases this Court found potential liability based on an employer's failure to engage in an interactive process in circumstances where the plaintiff alleged that the result of that breakdown was the employer's failure to provide a reasonable accommodation.

Our conclusion that a plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process is consistent both with this Court's assertion that the interactive process is a means and not an end in itself, see Sieberns, 125 F.3d at 1023, and with the remedial purposes of the ADA, see 42 U.S.C. sec. 12101(a)(8) ("[T]he Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals."). The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations. See Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) (rejecting a failure to investigate claim where no reasonable accommodation could have been made) (citing Moses v. American Nonwovens, Inc., 97 F.3d 446, 448 (11th Cir. 1996)). To hold employers liable for the failure of an interactive process regardless of whether a reasonable accommodation was made would not serve the underlying purposes of the ADA, and would, contrary to our own precedent, elevate the ADA's interactive process requirement to an end in itself.

Based on our understanding of the interactive process requirement, we hold that a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual./5 In this case, the City and Rehling agreed on Rehling's relevant

limitations, and the City offered Rehling two positions that accommodated his needs. Because Rehling does not contest the suitability of the alternative positions offered to him, but rather only alleges that those accommodations were unreasonable by virtue of the City's failure to engage in a proper interactive exchange, the district court correctly determined that Rehling did not contest the reasonableness of the accommodations made. Accordingly, the district court did not err in granting partial summary judgment to the City.

B.

We now turn to the evidentiary issues raised by the appellant. Rehling claims that the district court made two significant errors during the course of trial in its evidentiary rulings. First, Rehling argues that despite the fact that the trial was limited to the issue of disparate treatment, the district court allowed the City to introduce irrelevant evidence about the position the City offered Rehling in the Alternative Response Unit. Second, Rehling contends that the district court erred in excluding evidence of the substance of conversations between General Counsel Zoufal and other members of the CPD based on the attorney-client privilege. According to Rehling, the introduction of evidence about the position in the Alternative Response Unit, and the district court's decision on the attorney-client privilege issue, resulted in an unfair trial.

1. The Admission of Evidence Regarding the Alternative Response Unit

We review the rulings of the district court regarding the admissibility of evidence for an abuse of discretion. See Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996). "[T]he relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether any reasonable person could agree with the district court." Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1266 (7th Cir. 1988) (quoting Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 573 (7th Cir. 1984)). If we determine that the district court has abused its discretion in making an evidentiary ruling, we nonetheless affirm the district court if the erroneous ruling is determined to be harmless. See Holmes v. Elgin, Joliet & E. Ry. Co., 18 F.3d 1393, 1397 (7th Cir. 1994).

The plaintiff contends that the district court erred in admitting evidence regarding the position offered to Rehling in the Alternative

Response Unit. At trial, the district court allowed the City to present evidence about both the value of the position at the Alternative Response Unit, and the transportation issues about which Rehling expressed concern. According to Rehling, this was erroneous because the trial had been explicitly limited to the issue of disparate treatment, and the evidence about the position in the Alternative Response Unit related only to the issue of reasonable accommodation. Rehling contends that the evidence admitted was therefore irrelevant, and that it confused and prejudiced the jury.

After a review of the record, we cannot conclude that the district court abused its discretion in admitting evidence as to the position at the Alternative Response Unit. The trial was limited to the issue of disparate treatment, but that limitation did not mean that no evidence of the alternative positions offered to Rehling could be introduced. Rather, we look only to whether the evidence offered by the City was relevant to the issue of disparate treatment. Fed.R.Evid. 402; United States v. Messino, 181 F.3d 826, 829-830 (7th Cir. 1999) (stating that the federal rules establish a presumption that relevant evidence is admissible).

Once a plaintiff in an ADA disparate treatment case has established the proper connection between his disability and an adverse job action/6 through indirect proof, the employer is required to show a legitimate nondiscriminatory reason for the job action. See Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir. 1999) (applying the McDonnell Douglas burden-shifting test to disparate treatment claims under the ADA); Sieberns, 125 F.3d at 1022 (same); DeLuca v. Winer Indus., 53 F.3d 793 (7th Cir. 1995) (same)./7 In that regard, it is significant that Rehling alleged that the City transferred him out of District 16 and to the Alternative Response Unit because of his disability and that this discriminatory transfer stigmatized him. Given that claim, the City was entitled to present evidence relevant to the issue of the City's motivations in offering Rehling a position in that unit and to the stigmatizing effect of that transfer.

Much of the testimony admitted about the position in the Alternative Response Unit was relevant to the City's motives in transferring Rehling and the stigmatizing effect of that transfer. Once Rehling claimed the City transferred him because he was disabled, the City was entitled to counter that assertion with evidence of its personnel needs. In this case, the City argued that it did not keep Rehling in

District 16 because there was no position available there, and that it transferred Rehling to the Alternative Response Unit because it needed officers with Rehling's experience in that position. This evidence was certainly relevant to the issue of the City's motivations. Furthermore, Rehling asserted that the transfer to the Alternative Response Unit stigmatized him. To the extent stigma was placed at issue, the City's evidence as to the value of the position was clearly relevant to determining the stigmatizing effect of a transfer to that position. Because it was relevant to the issue of the discriminatory transfer, the district court did not err in admitting evidence about the availability and desirability of the alternative position offered to Rehling.

We do agree with Rehling that the City's evidence as to his ability to get to and from work at the Alternative Response Unit was not relevant to the inquiry into the City's allegedly discriminatory motives in transferring Rehling. However, Rehling himself testified that he could not take a position with the CPD outside of District 16 because he had no means of getting to and from work. In light of this testimony, it would have been unfair to deprive the City of the ability to demonstrate that it had worked with Rehling to find a solution to his transportation problems. By testifying about his inability to get to work, Rehling opened the door to evidence about the City's efforts to find him a means of transportation to and from the Alternative Response Unit. See United States v. Moore, 115 F.3d 1348, 1358 (7th Cir. 1997) (stating that when a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence); United States v. Wynn, 845 F.2d 1439, 1443 (7th Cir. 1988). Accordingly, the district court did not abuse its discretion in allowing the admission of this evidence.

2.  The Attorney-Client Privilege

Rehling finally contends that the district court erred in determining that the substance of conversations between General Counsel Zoufal and members of the CPD was protected by the attorney-client privilege. According to Rehling, Zoufal's statements about Rehling's injury, and about the desirability of employing a disabled officer at District 16, are not protected by the attorney-client privilege because the statements were made by Zoufal in his business capacity as a decisionmaker on personnel matters. The City responds, and the district court found, that these statements were made in Zoufal's capacity as an attorney for the CPD, and that such

communications are privileged.

The attorney-client privilege protects confidential communications made by a client to his lawyer "'[w]here legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such.'" United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law sec. 2292 (John T. McNaughton rev. 1961)); Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 319 (7th Cir. 1963). Although the attorney-client privilege generally attaches only to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, see Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997), or where those communications would reveal the substance of a confidential communication by the client, see In re Witnesses Before the Special March 1980 Grand Jury, 729 F.2d 489, 493 (7th Cir. 1984). Because the attorney-client privilege is limited to situations in which the attorney is acting as a legal advisor, see In re Feldberg, 862 F.2d 622, 626 (7th Cir. 1988); Evans, 113 F.3d at 1463, we need to determine whether Zoufal was acting in his business or legal capacity when advising ranking members of the CPD about Rehling's transfer.

Rehling argues that the district court incorrectly determined that the attorney-client privilege applied to Zoufal's statements because the City failed to show that a full examination of Zoufal would reveal client confidences. However, the district court determined that Zoufal gave ranking members of the CPD advice about Rehling's placement and the City's obligations under the ADA, and that an examination of Rehling in regard to those issues would reveal that information. This is exactly the kind of legal advice the privilege was meant to protect. Although we regard the applicability of the attorney-client privilege in the context of this case to be a close question, our review of the district court's privilege determination is conducted under the highly deferential clearly erroneous standard. See United States v. Frederick, 182 F.3d 496, 499-500 (7th Cir. 1999) (holding that a district court's determination as to the applicability of a privilege is reviewed for clear error); In re Teranis, 128 F.3d 469, 471 (7th Cir. 1997); Williams v. Commissioner, 1 F.3d 502, 505 (7th Cir. 1993).

In this case, Zoufal did testify that he rendered legal advice in his capacity as General Counsel, and other members of the CPD identified

themselves as the actual decisionmakers behind Rehling's transfer. More significantly, the evidence showed that Zoufal was not empowered to make a business decision transferring Rehling out of District 16. In light of this evidence, we cannot conclude that the district court clearly erred in holding that the attorney-client privilege barred the introduction of evidence of the substance of Zoufal's conversations with ranking members of the CPD.

III.  Conclusion

We hold that the district court properly granted partial summary judgment to the City on Rehling's reasonable accommodation claim, and that the district court did not commit an abuse of discretion by admitting evidence of the position in the Alternative Response Unit at the trial on disparate treatment. In addition, we hold that the district court's exclusion of evidence based on the attorney-client privilege was not clearly erroneous. Accordingly, we AFFIRM the decision of the district court.


/1 As a technical matter, the district court did not grant the City partial summary judgment, but rather found that Rehling had effectively abandoned his reasonable accommodation claim. However, both parties recognize that this finding is the functional equivalent of a grant of partial summary judgment. We will therefore continue to refer to the district court's action as a grant of partial summary judgment, and we review the claim accordingly.

/2 Under the ADA, an employer cannot "discriminate against a qualified individual with a disability" by "not making reasonable accommodations to the known physical or mental limitations of . . . an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. sec. 12112(a)(5)(A).

/3 When "'a qualified individual with a disability' [is treated] differently because of the disability," a disparate treatment claim exists under the ADA. Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1021-22 (7th Cir. 1997).

/4 The City does not dispute that Rehling was "a qualified individual with a disability" within the meaning of the ADA. See 42 U.S.C. sec. 12112(a).

/5 Rehling did testify below that he was concerned about his ability to obtain transportation to and

from a position at the Alternative Response Unit. Rehling does not raise this point on appeal, however, perhaps because the evidence adduced at trial clearly showed that the City worked closely with Rehling to try to resolve these transportation issues. The City not only suggested public transportation and participation in the Chicago Transit Authority's disability ridership van program, but even arranged a ride to work for Rehling with another officer. Because Rehling does not contest the reasonableness of the accommodation offered him on the ground that he could not get to work, we do not consider whether such an assertion would create a jury question as to whether the City's alleged failure to engage in a proper interactive process led to its failure to offer Rehling a reasonable accommodation.

/6 Under the ADA, adverse employment actions may include "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a). While this Circuit has interpreted the concept of an adverse employment action broadly, see Silk v. City of Chicago, 194 F.3d 788, 800 (7th Cir. 1999), it is not clear that Rehling's transfer constitutes the kind of adversity that would qualify. However, because the parties do not address this issue at any length, and because we affirm the decision of the district court on other grounds, we need not consider whether Rehling has demonstrated the kind of adverse employment action necessary to maintain a disparate treatment claim under the ADA.

/7 Under the burden-shifting test enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff attempting to prove discrimination through indirect proof must establish "(1) that she is disabled within the meaning of the ADA, (2) that her work performance met her employer's legitimate expectations, (3) that she was discharged [or was subjected to some other adverse employment action], and (4) that the circumstances surrounding [the adverse action] indicate that it is more likely than not that her disability was the reason for these adverse actions." Weigel v. Target Stores, 122 F.3d 461, 465 (7th Cir. 1997) (quoting Leffell v. Valley Fin. Serv., 113 F.3d 787, 794 (7th Cir. 1997)).