# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HELME V. WALTER,
*Plaintiff-Appellant,*

v.

UNITED AIRLINES, INCORPORATED,
*Defendant-Appellee.*

No. 99-2622



Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James G. Cacheris, Senior District Judge.
(CA-99-569-A)

Argued: September 27, 2000

Decided: October 25, 2000

Before WILLIAMS and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Charles Cook, CHARLSON BREDEHOFT, P.C.,
Reston, Virginia, for Appellant. Kim Ann Leffert, MAYER, BROWN
& PLATT, Chicago, Illinois, for Appellee. **ON BRIEF:** Elaine Charl-
son Bredehoft, CHARLSON BREDEHOFT, P.C., Reston, Virginia,
for Appellant. Andrew A. Nicely, MAYER, BROWN & PLATT,
Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Helme Walter (Walter) appeals the district court's grant of summary judgment in favor of United Airlines, Inc. (United) on her claim brought under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, alleging that United failed to reasonably accommodate her photosensitivity disability. For the reasons stated below, we affirm.

I

In February 1990, Walter began working for United as a reservation sales and services representative in United's Los Angeles, California reservations facility. The following year, Walter was transferred to a similar position in United's Sterling, Virginia reservations facility. As a reservation sales and services representative, Walter sat at a cubicle work station, which contained a desk and a computer. During her shift, Walter received telephone calls from customers and booked their reservations.

In August 1995, Walter told her supervisor, Carolyn MacArthur, that she was experiencing a "photosensitivity" reaction to the fluorescent lights in the Sterling reservations facility, and she asked United to move her to another area of the facility or modify the lighting to accommodate her physical condition.* In the months that followed,

---

*The record reflects that ultraviolet radiation is divided into three types, depending on wave length. Ultraviolet-A is commonly found in sunlight. Ultraviolet-B (UV-B) is found in sunlight in small quantities and generally is emitted by fluorescent lights. Ultraviolet-C does not occur naturally on earth and is harmful to all people. Walter is unduly sensitive to UV-B radiation. According to Walter, her photosensitivity causes her skin to burn and causes her muscles to ache when she is exposed to UV-B radiation. The Sterling reservations facility contains a large amount of fluorescent lighting.

United made numerous accommodations for Walter that were recommended by Dr. Alan Moshell, Walter's treating physician for her photosensitivity. For example, in October 1995, United removed two fluorescent tubes from the light fixture over Walter's work station, and in early November 1995, United granted Walter's request to have a designated permanent work station and allowed Walter to choose the work station she desired. On November 22, 1995, United replaced the fluorescent light fixture over Walter's work station with an incandescent light fixture and removed one fluorescent light fixture in a corner of the cafeteria. On February 5, 1996, United converted a portion of the cafeteria to incandescent lighting to provide Walter a place to eat or take a break.

In February 1996, the work team to which Walter was assigned was relocated to a different area of the Sterling reservations facility. To accommodate Walter's photosensitivity, United made numerous alterations in and around Walter's new work station. For example, on February 22, 1996, United converted the light fixture over Walter's new work station to incandescent lighting and removed two of the fluorescent tubes from the light fixture in the aisle near her work station. On that same day, Walter complained that the computer at her new work station was causing her condition to deteriorate. The following day, United removed the monitor, computer unit, and all of the associated cables from Walter's old work station and installed them at her new work station. Also on February 23, 1996, United removed the remaining two fluorescent tubes in the light fixture over the aisle near Walter's work station. On the same day, Walter complained that the light from the light fixture directly in front of her work station was causing her discomfort. On February 28, 1996, United hung a posterboard shield around her work station which blocked some of the light from the light fixture in front of her work station while minimizing the effect on other work stations. After this installation, Walter indicated that she was satisfied with this arrangement.

On June 12, 1996, Walter complained that she was experiencing discomfort while standing under the fluorescent lights above the reception desk at the Sterling reservations facility while checking in at the beginning of each shift. In response, United permitted Walter to bypass the check-in procedure. United also allowed Walter to go outdoors if she was feeling sick, even after she had used up all of her

normal break periods for the day. United never disciplined Walter for taking extra breaks to go outdoors.

On three occasions in the late spring and early summer of 1996, United had to evacuate the Sterling reservations facility because mold had entered the ventilation system. Because of United's faulty ventilation system, Walter experienced respiratory problems from May through October 1996 and missed a significant amount of work during this period.

In mid-October 1996, Walter returned to work at the Sterling reservations facility, beginning with three-hour shifts. Even though her normal shift was ten hours, United agreed to account for the remaining hours as paid sick leave.

In late 1996, Dr. John Balbus, Walter's treating physician for her respiratory problems, recommended to United that the posterboard shield around Walter's work station be taken down to permit airflow and that acrylic prismatic diffusers be used to cover the lights over Walter's work station, the surrounding area, and the paths to the restroom and exit. In response, United installed acrylic prismatic diffusers over four fluorescent light fixtures near Walter's work station, but, according to Walter, the diffusers did not completely cover the lights.

On January 6, 1997, United's medical director, Dr. Anthony Fernandez, informed United's management team that he did not agree with Dr. Balbus' recommendations relating to Walter's work station. Dr. Fernandez also expressed disagreement with Dr. Balbus' recommendation that Walter remain on partial shifts. Accordingly, on January 7, 1997, by letter, United advised Walter that she was required to begin working ten-hour shifts. In the letter, United further advised Walter that because Dr. Fernandez disagreed with Dr. Balbus, she was entitled to proceed to medical arbitration, which would allow her to be examined by a third doctor (mutually agreed upon by Drs. Fernandez and Balbus). Under United's medical arbitration procedure, the cost of the examination is split by United and the employee, and the decision is binding on United and the employee.

Following her receipt of United's January 7, 1997 letter, Walter informed United that she wished to have the need for further accom-

modations submitted to medical arbitration. Thus, on January 30, 1997, Dr. Fernandez wrote Dr. Balbus concerning the nomination of an impartial physician as the medical arbitrator, but Dr. Balbus did not reply to this letter, nor did he reply to Dr. Fernandez' March 19, 1997 follow-up letter. However, on July 8, 1997, Dr. Balbus wrote Dr. Fernandez and informed him that Dr. Moshell was the appropriate contact.

Meanwhile, in February 1997, Walter's mother had a heart attack. As a result of her mother's condition, Walter took extended family leave from March 11 to August 24, 1997. After only a few days back at work at the Sterling reservations facility, Walter claimed that she could not remain at work due to her photosensitivity. Based on Dr. Moshell's recommendation, Walter has not returned to work, and has remained on medical leave.

Walter and United never proceeded to medical arbitration. On February 12, 1997, Walter filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging numerous violations of the ADA, including claims that United violated the ADA by failing to make reasonable accommodations for her "photosensitivity" and "airborne irritant hypersensitivity" disabilities, by retaliating against her for requesting accommodations and for supporting the disability claim of a co-worker, and by forcing her to engage in arbitration. On September 29, 1997, the EEOC issued a determination in Walter's favor. After unsuccessful attempts to conciliate with United, the EEOC issued Walter a right to sue letter on January 4, 1999.

On April 1, 1999, Walter filed a motion for judgment in the Circuit Court for Loudoun County, Virginia. In her motion for judgment, Walter alleged that United failed to make reasonable accommodations for her "photosensitivity" and "airborne irritant hypersensitivity" disabilities, and that United retaliated against her for requesting accommodations and for supporting the disability claim of a co-worker, in violation of the ADA. On April 23, 1999, United removed the case to the United States District Court for the Eastern District of Virginia. *See* 28 U.S.C. §§ 1441, 1446.

On September 14, 1999, United filed a motion for summary judgment on all of Walter's claims. On November 9, 1999, the district

court granted United's motion for summary judgment. Walter noted a timely appeal. On appeal, Walter only challenges the district court's grant of summary judgment in favor of United on her claim alleging that United failed to accommodate her photosensitivity disability.

II

The ADA prohibits discrimination against disabled individuals. *See* 42 U.S.C. § 12112. The prohibition extends not only to the denial of employment opportunities based on vocationally irrelevant disabilities, but extends to discrimination based on disabilities that impair the individual's ability to perform her job. *See id.* §§ 12102(2)(A), (C). Thus, the ADA defines discrimination as including an employer's

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

*Id.* § 12112(b)(5)(A). Under the ADA's scheme, then, it is discriminatory for a covered employer to decline to take reasonable steps to accommodate an employee's disability, unless the steps in question "would impose an undue hardship on the operation of the business" of the employer. The ADA also provides a definition of the term "reasonable accommodation":

> The term "reasonable accommodation" may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9).

Before an employer may be liable for failing to provide an employee with a reasonable accommodation, the employer must be aware of the employee's disability. *See Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134-35 (7th Cir. 1995). Once an employer's responsibility to provide a reasonable accommodation is triggered, it may be necessary for the employer to engage in an "interactive process" to determine the appropriate accommodation under the circumstances. *See id.* at 1135; *see also* 29 C.F.R. § 1630.2(o)(3). The Federal Regulations envision an interactive process that requires participation by both parties:

> [T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.

29 C.F.R. pt. 1630, app. However, an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000). Rather, the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee. *See id.*

On appeal, the parties do not dispute that Walter was a qualified individual with a disability under the ADA. In light of the parties' position, we will assume as much. Accordingly, the principal issue in this case is whether United provided Walter with reasonable accommodations for her photosensitivity disability. United claims that it did; Walter claims that United did not. The district court agreed with United, principally on the basis that United made numerous accommodations over a long period of time and acted in good faith during the interactive process.

The record clearly establishes that United reasonably accommodated Walter's photosensitivity disability. Between October 1995 and December 1996, United made numerous accommodations for Walter.

Among other things, United changed several light fixtures near Walter's work station, installed a posterboard shield around her work station, removed fluorescent tubes from nearby light fixtures, installed special lighting in the cafeteria, replaced Walter's computer, and allowed Walter to take breaks at will. In addition, United allowed Walter to work three-hour shifts while being paid for ten-hour shifts until her sick leave allotment was exhausted. These accommodations, taken as a whole, discharged United's duty to reasonably accommodate Walter. Indeed, the installation of the posterboard shield and the changes to the lighting system allowed Walter to perform her job without discomfort from UV-B radiation.

Walter argues that, regardless of the number and extent of the accommodations United made, the district court erred when it granted summary judgment in favor of United because United declined to implement the additional accommodations Walter requested in late 1996, *e.g.*, the removal of the posterboard shield and the proper installation of acrylic prismatic diffusers.

Walter's argument fails for the simple reason that the ADA does not require an employer to provide the specific accommodation requested by the disabled employee, or even to provide the best accommodation, so long as the accommodation provided to the disabled employee is reasonable. *See Rehling*, 207 F.3d at 1014. Because the installation of the posterboard shield and the other changes to the lighting system were reasonable accommodations, United had no duty to remove the posterboard shield or make further modifications to the lighting system.

Walter also argues that the district court erred when it granted summary judgment in favor of United on her photosensitivity claim because United failed to engage in an "interactive process" with Walter. This argument has no merit. As noted above, an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process. *See Rehling*, 207 F.3d at 1016. Rather, the employee must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the qualified employee. *See id.* In this case, because United reasonably accommo-

dated Walter's photosensitivity disability, United's alleged failure to engage in an interactive process is of no consequence.

## III

For the reasons stated herein, the judgment of the district court should be affirmed.

*AFFIRMED*