William F. DONER, Jr.,
Plaintiff–Appellant,

v.

CITY OF ROCKFORD, IL.,
Defendant–Appellee.

No. 03–1643.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 2003.

Decided Oct. 8, 2003.

---

Before KANNE, ROVNER, and Hon. EVANS, Circuit Judges.

ORDER

William Doner, a former Rockford police officer with multiple sclerosis, filed this lawsuit in 1999, alleging that Rockford had failed to engage in the interactive process and accommodate his disability as required by the Americans with Disabilities Act and the Rehabilitation Act. The district court entered summary judgment for the City, and Doner appeals. We affirm.

Doner became a Rockford patrol officer in March 1972. In 1985 he was promoted to the position of investigator, which the City defines as involving "investigating crime scenes or motor vehicle accidents, collecting and analyzing evidence, and identifying and apprehending suspects." During his employment, Doner conducted fieldwork and performed arrests, which suspects at times resisted. He was still in this position in 1990, when he was diagnosed with multiple sclerosis, an autoimmune disease that attacks the central nervous system. Although the severity of Doner's symptoms has varied, he has experienced difficulty walking and standing, and began using a wheelchair in 1995. Once the Department became aware of Doner's condition and these physical limitations, it began corresponding with his

doctors to determine the extent of his disability. It also modified his job duties so that he conducted investigations from inside the police station. Doner was placed on "light duty," which involved answering phones, filing, and performing follow-ups, but did not require him to leave the office.

By 1995 it was apparent that Doner would probably never walk again. Upon learning this Deputy Chief Jeff Nielsen wrote him a letter, stating that "[s]ince it does not appear that you will be able to return to a full-duty status within a reasonable time-period, it is necessary to address the issue of your continuing employment with this department as a police officer." The letter continued to state that "Departmental policy has several alternatives for individuals who are not likely to return to full duty." Doner responded with a memorandum stating that he "planned to remain" with the Department. He expressed a desire to continue on "light duty" status. Chief William Fitzpatrick subsequently filed a complaint with the Fire and Police Commission alleging that Doner was physically unfit for duty and seeking his discharge. Doner then applied for and received a medical pension. In October 1996, he brought discrimination charges with the Illinois Department of Human Rights that were dismissed for lack of evidence and jurisdiction. The present suit followed.

In granting summary judgment to the City, the district court determined that Doner was not a "qualified individual with a disability" under the ADA because he could not perform the essential functions of being an investigator, namely apprehending suspects. The court gave great weight to the City's job description in defining the essential functions, stating that the City's interest in having all officers be physically able to respond to a crisis was legitimate. Further, the court held that the City could not be held liable for failing

to reassign Doner to another job as an accommodation, because he had not successfully proven that any vacant positions existed for which he was qualified. Finally, the court held that the City's failure to engage in the interactive process was not actionable because Doner had not shown that a possible accommodation existed.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 448 (7th Cir.2001).

■ Doner first argues that the district court erred in determining that he was not a "qualified individual with a disability" entitled to accommodations under the ADA. 42 U.S.C. § 12112(b)(5)(A). A qualified individual is one who can, with or without accommodation, perform the "essential functions" of a position. 42 U.S.C. § 12111(8). Doner argues that apprehending suspects is not an essential function of the position of investigator, because not all investigators apprehend suspects on a regular basis. He argues that many investigators work almost entirely within headquarters, and that he himself did so for several years. Finally, he argues that he was able to perform the essential functions of his position at the time he left the force, because he had been assigned to "light duty," which never required him to apprehend suspects.

To determine whether a job function is essential, we consider a number of factors, including the employer's judgment, written job descriptions, the amount of time spent on the function, the consequences of not requiring the function, and the work experiences of those performing the job. 29 C.F.R. § 1630.2; *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir.2001). We generally look "to see if the employer actually requires all employees in a particular position to perform the allegedly essential

function." *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir.1998). However, we also avoid second-guessing the employer's judgment, so functions may be "essential" even if not frequently performed, as long as they serve a valid employer interest. *See Basith*, 241 F.3d at 929.

In this case, the City's job description includes "identifying and apprehending suspects." The City has stated in its brief that if this function is not deemed essential, it is "difficult to imagine what other duties would be." Further, not requiring this function of officers might make it harder for the Department to effectively respond to crises. *See Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir.1997) (important safety interests make physically confronting inmates an essential, if infrequent, function of being a prison guard). Doner is correct that this function does not take up the bulk of an investigator's time, but as we have noted, this is not necessarily determinative. *See Basith*, 241 F.3d at 929. It is clear that the apprehension of suspects was a legitimate and non-pretextual requirement of Doner's investigator position at the time he took it, and the City should not be required to limit the position to office work simply because that might be possible. *See Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir.2001); *Frazier v. Simmons*, 254 F.3d 1247, 1260 (10th Cir.2001) (investigator with MS unable to perform essential functions of investigator position due to mobility problems).

■ Next, Doner contends that, even assuming he could no longer perform the essential functions of an investigator, the district court should have held the City liable for failing to reassign him to another open position. He argues that he produced sufficient evidence of vacant positions with the City to avoid summary judgment. He also claims that, due to the City's failure to engage in the interactive process, he had no way of knowing of open posi-

tions, and therefore the burden of proof regarding vacancies should have been on the City.

The ADA requires that employers accommodate disabled employees by reassigning them to new positions when they can no longer perform their old ones. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996). However, an employer need not bump an incumbent from a position to accommodate a disabled employee. *Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 595 (7th Cir.1999). Further, the ADA does not require an employer to abandon legitimate, nondiscriminatory company policies like job prerequisites, collective bargaining constraints, and seniority. *Winfrey*, 259 F.3d at 618. Therefore, an ADA plaintiff must generally establish that his or her employer had a vacant position for which he or she was qualified at the time of discharge. *Rehling v. City of Chicago*, 207 F.3d 1009, 1014–15 (7th Cir.2000). Even when the interactive process has failed, the disabled employee retains the burden of showing that an accommodation existed, and that he or she did not receive it. *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir.2002).

In this case, the evidence Doner presented to the district court falls short. Although Doner showed that there were six vacant positions for "sworn officers" when he left the force in 1996, these positions involved apprehending suspects, which he was no longer qualified to do. Doner also pointed to numerous positions with the City that he claimed a person in a wheelchair could perform—such as implementing public awareness programs with the Drug–Free Community Partnership Program or performing office tasks for the Community Development & Planning Division—but he did not show that any of these positions were vacant. Finally, Doner indicated that the City created thirty-

four new positions the year he left the force, but he did not specify which positions those were or demonstrate that he was qualified for them. So while Doner presented a fair amount of evidence regarding both City job vacancies and his qualifications, he did not identify a *specific* vacant position for which he was qualified. That is what the ADA requires. *See Rehling*, 207 F.3d at 1015.

Further, although Doner contends that he had "no way" of knowing about open positions for which he was qualified, the City pointed out at oral argument that all job openings in Rockford are posted in each City department. Additionally, a call to the personnel office could have revealed this information, not to mention the process of pre-trial discovery.

Finally, Doner contends that the district court erred in granting summary judgment to the City on the issue of its liability for failure to engage in the interactive process. He claims that the City's failure to consider any options except termination or resignation was a bad faith violation of its duty to discuss accommodation with him. Because he informed the City of his disability and his desire to remain employed, he argues, the City should be held liable for the breakdown of communications between the parties.

When a disabled employee gives notice of a desire for accommodation, this triggers a mutual duty to communicate in good faith to determine a reasonable solution. *Emerson v. Northern States Power Co.*, 256 F.3d 506, 515 (7th Cir.2001). However, the interactive process is "not an end in itself." *Rehling*, 207 F.3d at 1015. Unless the failure to interact resulted in the loss of a reasonable accommodation that otherwise would have been reached, it is not actionable. *Id.* at 1016. Again, the plaintiff bears the burden of showing that an accommodation in fact existed. *Mays*, 301 F.3d at 870.

Doner did not present sufficient evidence that there was an accommodation that would enable him to continue working for the Department. Therefore, he cannot recover simply for a failure to interact; "the failure to jaw about accommodation is harmless." *Id.* at 871.

Accordingly, we AFFIRM the judgment of the district court.