**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| KENNETH HOLMES,<br>        Appellant, | DOCKET NUMBER<br>SF-0752-22-0425-I-1 |
| v. | |
| DEPARTMENT OF<br>   TRANSPORTATION,<br>        Agency. | DATE: January 22, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Sara L. Bloom</u>, Esquire, Anchorage, Alaska, for the appellant.

<u>Maria Teresa Davenport</u>, Esquire, Anchorage, Alaska, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which reversed the agency's removal action. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review, and cross petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was employed as an FV-0802-H Engineering Technician (802 ET) for the Federal Aviation Administration's Engineering Services group at the Infrastructure Construction and Installation Center in Anchorage, Alaska. Initial Appeal File (IAF), Tab 1 at 8-9. From 2011 until 2018, the appellant mostly performed Contracting Officer Representative (COR) duties, which is project coordinator work that involves monitoring Federal contractors performing installation and construction at various worksites. IAF, Tab 10 at 75; Hearing Transcript, Day 2 (HT-2) at 120, 125 (testimony of the appellant). In 2018, however, the agency was attempting to replace a navigational aid on Adak Island and the appellant's second-level supervisor, S.H., wanted to send the appellant and other members of his small work unit to help with construction work that would have involved repetitive heavy lifting and hand-mixing concrete. IAF, Tab 9 at 64-65; HT-2 at 80-81 (testimony of W.G.). The appellant indicated that he could not do this sort of work due to his age and the fact that the Department of Veterans Affairs has rated him as 60% disabled, and subsequently submitted a reasonable accommodation request in October 2018 to his then-supervisor, W.G.,

requesting that the agency accommodate his service-related disabilities by not assigning him installation, construction, and manual labor tasks involving prolonged sitting, standing, twisting, bending, lifting above the shoulder line, lifting greater than 30 pounds, or lifting awkward or bulky items. IAF, Tab 10 at 11, 16, 21-22; HT-2 at 127-28 (testimony of the appellant). As part of his request, the appellant explained that he believed that all duties outside of COR work were marginal functions of his position and that he was only limited to not performing "the more physically demanding, labor-intensive tasks." IAF, Tab 10 at 22.

W.G. subsequently initiated the interactive process, asked the appellant to submit medical information, and convened an advisory Reasonable Accommodation Team (ReAct). *Id.* at 11-12, 294; Hearing Transcript, Day 1 (HT-1) at 35 (testimony of S.H.). The appellant submitted letters from two medical providers from November 2018 stating that his medical conditions include a right knee meniscus tear, bilateral rotator cuff tears, elbow tears, and a traumatic injury to his neck and upper back, but that he could still perform COR duties. IAF, Tab 10 at 15, 18-19. In March 2019, W.G. notified the appellant that he was still evaluating the appellant's request but was concerned that limiting the appellant to COR duties would leave essential functions, such as installation and construction duties, undone. *Id.* at 24. W.G. temporarily assigned the appellant to various light duty projects primarily at the "Complex," a warehouse facility that Engineering Services uses to store items and build out projects. *Id.* In September 2019, the appellant submitted a note from his medical provider, Dr. B.G., that restricted him from lifting greater than 20 pounds, continued overhead work with arms and shoulders, and repeated bending and twisting at the waist for 30 days after suffering a back injury. *Id.* at 27. The appellant's then first-level supervisor, F.C., was confused as to whether the appellant was being returned to full duty and if he needed to continue the interactive process and, in January 2020, the appellant submitted a letter from Dr. B.G. clarifying his various

restrictions and stating that the appellant was able to successfully perform nearly all tasks assigned to him "precluding installation and construction." *Id.* at 28-33, 44.

On April 6, 2020, after suggestion by the ReAct team, the appellant's then-acting manager, M.R., compiled a list of physical duties that he stated were essential functions of the 802 ET position and, in order to better evaluate what duties the appellant could perform, asked the appellant to have his doctor identify the tasks that he could successfully perform given his current physical limitations. *Id.* at 47-54. The list broke the physical duties of the appellant's position into 15 categories with almost 80 subtasks. *Id.* at 48-52. Dr. B.G. replied to the agency's request the next day, annotating each task as one that the appellant could accomplish, could accomplish with accommodations, one that was not recommended, and one that was prohibited, indicating that the appellant could perform 17 of the subtasks without accommodation and approximately 32 subtasks with accommodation. *Id.* Dr. B.G. added that while many of the tasks would exacerbate the appellant's underlying conditions, many could have accommodations including frequent rests, appropriate assisting devices, or other people on the same jobsites. *Id.* at 45. On April 17, 2022, M.R. responded, stating that it was "clear" that the appellant was unable to perform the essential functions of his position, primarily installation and construction duties, "without presenting a danger" to himself and asking the appellant whether this was an accurate conclusion to draw from his medical information. *Id.* at 60. The appellant did not directly respond to this question. *Id.* at 62, 66-68; HT-1 at 214 (testimony of M.R.).

In June 2020, M.R. notified the appellant that he had determined that the appellant could not be reasonably accommodated in his current position involving primarily installation and construction duties and that he would next consider job reassignment. IAF, Tab 10 at 61-65. On August 25, 2020, the agency offered the appellant an FG-0343-11 Step 10 position as a Management and Program Analyst

in Fort Worth, Texas, which he declined. IAF, Tab 42 at 40-42. On September 2, 2020, M.R. issued the appellant a notice of proposed removal for "inability to perform the essential functions of your position because of your medical condition." IAF, Tab 10 at 5-10. While the appellant's reply was under consideration, the agency approached him about a Logistics Management Specialist position in Anchorage that would have allowed him to continue working in the capacity he had been working in the Complex, but the appellant declined to update his resume for the position and human resources did not qualify him based on his current resume. HT-1 at 41-43 (testimony of S.H.). On November 18, 2020, the agency issued a decision letter sustaining the charge and removing the appellant effective December 22, 2020. IAF, Tab 6 at 14-18. The appellant retired effective December 22, 2020.[2] IAF, Tab 9 at 128-29.

The appellant subsequently filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging constructive discharge, and in June 2022, the EEOC directed him to file a complaint with the Board. IAF, Tab 7 at 8, 12. The appellant thereafter filed the instant Board appeal. IAF, Tab 1. The administrative judge found that the Board had jurisdiction over the agency's removal decision under 5 U.S.C. § 7701(j) and that the appellant's appeal was timely.[3] IAF, Tab 11. After holding the requested hearing, the administrative judge issued an initial decision reversing the agency's removal action and ordering the agency to retroactively restore the appellant effective December 22, 2020.[4] IAF, Tab 60, Initial Decision (ID) at 47. The

---

[2] The agency purposely set the effective date so that the appellant could retire prior to the removal, but if he did not retire, the removal would go into effect. HT-1 at 219-21 (testimony of M.R.).

[3] Under 5 U.S.C. § 7701(j), an appellant who retires after receiving the agency's decision to remove him, but on or before the scheduled effective date of his removal, may still appeal his removal to the Board. *Mays v. Department of Transportation*, 27 F.3d 1577, 1578-81 (Fed. Cir. 1994).

[4] The appellant indicated at the hearing, and on petition for review, that although he retired, his circumstances changed, and he would like to return to work for the FAA. HT-2 at 186-87 (testimony of the appellant); Petition for Review (PFR) File, Tab 3

administrative judge first concluded that the agency did not prove its charge. ID at 15-40. In this regard, the administrative judge found that the agency's April 6, 2020 list of duties overstated and did not establish the precise essential functions of the 802 ET position. ID at 16-29. He determined that the essential functions of the 802 ET position involve being able to perform a "critical mass" of the tasks identified in the April 6, 2020 list, including enough tasks in the installation and construction categories, as well as some COR work and some work in the Complex. ID at 16-29. The administrative judge concluded that the appellant is medically able to perform COR and Complex work, and that he is also able to perform some installation and construction work with accommodations, and thus that the agency did not establish the charge. ID at 29-40. The administrative judge also found that the appellant proved his affirmative defense of disability discrimination based on a denial of a reasonable accommodation. ID at 40-41. However, the administrative judge concluded that the appellant did not establish his claim of retaliation for making a reasonable accommodation request or his claim of disparate treatment disability discrimination, as he did not establish that his disability was a motivating factor in the removal decision. ID at 42-47.

The agency has filed a petition for review, arguing that the administrative judge erred in finding that it did not prove the charge and that the appellant established his affirmative defense of disability discrimination based on a denial of a reasonable accommodation. Petition for Review (PFR) File, Tab 1. The appellant filed a response and a cross petition for review in which he largely disputes the administrative judge's finding that he did not establish retaliation for making a reasonable accommodation request. PFR File, Tab 3. The agency filed a reply and a response to the appellant's cross petition for review. PFR File, Tab 5.

_____

at 15-16.

**DISCUSSION OF ARGUMENTS ON REVIEW**

<u>We agree with the administrative judge that the agency did not prove the charge.</u>

Where, as here, the appellant does not occupy a position with medical standards or physical requirements or subject to medical evaluation programs, in order to establish a charge of medical inability to perform, the agency must prove a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014); *see Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 10-15 (recognizing this standard and comparing it with the differing standard that applies in the context of an employee's removal from a position with medical standards based solely on their medical history). The Board has otherwise described this standard as requiring that the agency establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Haas*, 2022 MSPB 36, ¶¶ 15, 20. In determining whether an agency has met this burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform his core duties. *Id.*, ¶ 25.

The Board has indicated that the core duties of a position are synonymous with the essential functions of a position under the Americans with Disabilities Act (ADA), as amended by the Americans With Disabilities Act Amendments Act of 2008 (ADAAA), i.e., the fundamental job duties of the position, not including marginal functions. *Id.*, ¶ 21 (citing *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 6 (2014); 29 C.F.R. § 1630.2(n)(1)). Evidence of whether a particular function is essential includes, among other things, the employer's judgment as to which functions are essential, written position descriptions, the amount of time spent performing the function, the consequences of not requiring

the incumbent to perform the function, and the work experience of past and current incumbents in the job. 29 C.F.R. § 1630.2(n)(3).

Below, the appellant maintained that the essential functions of the 802 ET position were limited to COR work, while the agency maintained that the essential functions of the position were the various tasks on its April 6, 2020 list, including significant installation and construction work. *See* IAF, Tab 21 at 4; HT-2 at 208 (agency closing statement). In the initial decision, the administrative judge found that the position was not limited to COR work. ID at 22. He discussed several written position descriptions and found that each indicated that, at the least, the 802 ET position could involve some installation and construction work. ID at 18-23. He also credited the testimony of multiple past and present incumbents of the position who explained that while the duties of an 802 ET from 2011 to 2018 mostly involved COR/project manager work, the agency prefers to have its ETs perform work in-house and that installation and construction work was a central part of the job before 2011 and after 2018. ID at 21-22.

However, while the administrative judge found that the appellant understated the essential functions of the 802 ET position, he also found that the agency's April 6, 2020 list overstated the essential functions. ID at 25. As noted above, the agency's list broke down what it alleged are the essential functions of the position into 15 general essential functions, including: (1) rack and equipment installation; (2) cable pulling; (3) conduit installation; (4) electrical energized work; (5) grounding and bonding; (6) loading and unloading aircraft; (7) ladders and elevated platforms; (8) general mechanical/carpentry work; (9) electrical grounding work; (10) general housekeeping and maintenance work; (11) general physical COR work; (12) ES Complex; (13) overhead heater installation; (14) site demolition; and (15) install of SWS system. IAF, Tab 10 at 48-52. It further broke down these general functions into approximately 80 subtasks, including, for example, "hammer drilling 15 lbs., bent over less than 5 min at a time, but repetitive throughout the day," "installing and terminating

wires and or cables," "lifting 50 lb coolers repetitively," "standing on ladders to install electrical components and conduits minutes to hours," and "rebuilding walls and stairs." *Id.* The agency compiled the list by surveying tasks completed by ETs across different groups in Alaska over the past 2 years and then labeling every task an essential function. ID at 27; HT-1 at 210-212, 246 (testimony of M.R.).

Although this list is exhaustive, the administrative judge found that it does not accurately describe the essential functions of the appellant's 802 ET position because it does not focus on the work of the appellant's specific 802 ET unit, it does not distinguish between essential and marginal functions, and because the written position descriptions for the 802 ET position do not support essential functions as extensive and detailed as these. ID at 26-27. Further, the administrative judge explained that M.R. testified that he could accommodate an individual who could only perform part of the list, and the current manager of the appellant's old work unit, R.N., testified that an ET must be able to do some of these tasks, but not all, that projects vary, and he tries to utilize the skills of his employees accordingly. ID at 27; HT-1 at 244-45 (testimony of M.R.); HT-2 at 31-32 (testimony of R.N.). The administrative judge thus concluded, based on this testimony and his review of the evidence relating to the other factors set forth at 29 C.F.R. § 1630.2(n)(3), that the essential functions of the position include being able to perform a "critical mass" of the tasks identified in the April 6, 2020 list, including some tasks in the installation and construction categories, such that the 802 ET position is not fundamentally altered by putting the employee on permanent light duty or by limiting the individual to so few installation and construction tasks that he is unable to contribute to the core of the work unit. ID at 25-29. The administrative judge indicated that the essential functions involve some COR work, some work at the Complex, and some installation and construction work. *See* ID at 33-40.

We discern no reason to disturb the administrative judge's thoroughly analyzed and reasoned finding. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility). On review, the agency argues that the administrative judge improperly placed an "inordinate burden" on it to establish the precise essential functions of the position and that "the only reasonable conclusion is that the essential functions of the 802 ET position . . . are installation and construction duties in general." PFR File, Tab 1 at 20 (citing *Clemens*, 120 M.S.P.R. 616, ¶ 8 (defining the essential function of the position as "significant verbal communication" instead of the underlying tasks identified in the position description)). However, we do not find the administrative judge's conclusion that an 802 ET must be able to perform some installation and construction tasks identified in the April 6, 2020 list necessarily inconsistent with the contention that an 802 ET must be able to perform installation and construction duties in general. The administrative judge correctly recognized that an employee must be able to perform enough installation and construction tasks to contribute to the work unit. ID at 29.

The agency also argues throughout its petition that the administrative judge crafted a "modified" 802 ET position by finding that the essential functions of the position include some COR work, some work at the Complex, and some installation and construction work. *See* PFR File, Tab 1 at 13, 26. The agency emphasizes that the record shows that the 802 ET position involves mostly installation and construction duties, and that COR work and work at the Complex are now performed by employees in a different job series. *Id.* at 26. Although we appreciate the agency's point, the agency also continually maintained throughout this case that the essential functions of the 802 ET position are the tasks identified in its April 6, 2020 list, which include "[g]eneral physical COR work"

and work at the "ES Complex."[5]  IAF, Tab 10 at 48, 50-51.  The agency based its charge on the appellant's inability to perform these functions of his position. IAF, Tab 6 at 14-16.  As previously stated, the administrative judge repeatedly acknowledged that the 802 ET position primarily involves installation and construction duties.  *See* ID at 22-23, 28.  The administrative judge also found that incumbents periodically work in the Complex and may do COR work.  ID at 28; *see also* HT-1 at 44 (testimony of S.H.).  Thus, the agency's argument provides no reason for disturbing the initial decision.  Moreover, we agree with the administrative judge's conclusion and above characterization that the essential functions, or core duties, of the 802 ET position on the record before us include being able to perform a "critical mass" of the tasks identified in the April 6, 2020 list.  *See Clemens,* 120 M.S.P.R. 616, ¶ 6.

The administrative judge also subsequently determined that the appellant was medically able to perform work in the Complex, COR work, and some installation and construction work, both with and without accommodations, thus leading to the conclusion that the agency did not establish that the appellant's medical condition prevented him from being able to safely and efficiently perform the core duties of his position.  ID at 29-40.  The administrative judge reviewed the various medical evidence noted above, including a January 2020

---

[5] On review, the agency states that the April 6, 2020 list was "perhaps inarticulately worded by referring to the duties as 'essential functions,'" when the purpose of the list was to help the appellant "develop an accommodation request that could be found reasonable and effective."  PFR File, Tab 1 at 19.  But the agency's statement is inconsistent with its position throughout the entirety of this case and, most importantly, its removal letter, which specifically referred to the tasks listed in the April 6, 2020 letter as essential functions.  *See* IAF, Tab 6 at 14-16.  Further, the agency states that the list was developed to fully understand how the appellant's restrictions affected his ability to perform all of the essential functions of his position and that if he "could perform enough of the subtasks, for example, he could be deemed able to perform that job category despite not being able to complete them all, and thus could be deemed capable of performing installation and construction in general."  PFR File, Tab 1 at 19. This reasoning is consistent with the administrative judge's analysis and conclusion that the essential functions of the position include being able to perform a "critical mass" of the tasks identified in the April 6, 2020 list.

letter from Dr. B.G. setting forth the appellant's most recent particular restrictions that stated that "[i]n order to maintain his current level of functioning and health[, the appellant] should not be tasked with prolonged sitting, standing, twisting, bending, lifting above shoulder line or lifting greater than 30 lbs, hoisting[,] pulling[,] stooping and squatting." IAF, Tab 10 at 44. With respect to the appellant's ability to perform installation and construction work, the administrative judge found that the appellant's restrictions ruled out some work, but that the agency did not establish that all installation and construction work has physical requirements that are beyond the appellant's limitations, because it did not establish whether any particular subtasks on the April 6, 2020 list are, in and of themselves, essential. ID at 36-37. Based on Dr. B.G.'s annotations of the April 6, 2020 list of alleged essential functions, which also constitutes medical evidence, the administrative judge found that although there were five categories where the appellant likely could not perform the subtasks in question (conduit installation, loading and unloading aircraft, overhead heater installation, site demolition, and installation of SWS system), he could perform each of the subtasks with accommodations in four categories (cable pulling, electrical energized work, grounding and bonding, and general housekeeping and maintenance work) and most of the subtasks in the four remaining construction-based categories (rack and equipment installation, ladders and elevated platforms, general mechanical/carpentry work, and electrical grounding work). ID at 37; *see also* IAF, Tab 10 at 48-52. The administrative judge found that the appellant could perform the above tasks with reasonable accommodations including taking breaks as needed, using assistance devices, and job modification, since ETs work in crews with varying assignments, which he found consistent with testimony from M.R. and R.N. about how work is done. ID at 38; *see also* IAF, Tab 10 at 45.

On review, the agency argues that the administrative judge improperly considered the medical evidence in this case. PFR File, Tab 1 at 14-17.

Specifically, the agency claims that the administrative judge wrongly gave "little weight" to medical opinions that recommended that the appellant "avoid installation and construction tasks" and relied on medical documentation that the appellant submitted to support his request to perform solely COR duties when installation and construction work is far more strenuous. *Id.* at 14-15. We disagree. In reaching his conclusion, the administrative judge properly weighed the medical evidence. ID at 29-38; *see Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 11 (2014) (recognizing that, in assessing the probative weight of medical opinions, the Board considers whether the opinion was based on a medical examination and provided a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the appellant), *overruled on other grounds by Haas*, 2022 MSPB 36.

Although the administrative judge gave little weight to medical opinions that simply stated that the appellant should avoid installation and construction work, he properly reasoned that some of these opinions lack appropriate specificity and, because installation and construction work varies, whether the appellant can perform it depends on the particular requirements. ID at 31. Neither of the opinions that the agency points to indicate an understanding of what installation and construction work actually entails. *See* PFR File, Tab 1 at 15; IAF, Tab 10 at 37, 44; *Brown*, 121 M.S.P.R. 205, ¶ 11. Further, although the administrative judge discussed medical documentation that stated that the appellant could continue to work as a COR, which we acknowledge is less physically strenuous than installation and construction duties, the administrative judge correctly went on to analyze whether the particular restrictions within those documents prevented the appellant from performing installation and construction duties. *See* ID at 31-32, 36-38. We understand the agency's concern that it cannot "simply ignore" medical recommendations that put it on notice of the

appellant's physical limitations; however, the agency's arguments on the whole also largely ignore the fact that Dr. B.G.'s response to its April 6, 2020 list explicitly indicates that the appellant *can* perform some installation and construction work. PFR File, Tab 1 at 15.

The agency also disputes the fact that the administrative judge credited the appellant's estimation of his physical condition and testimony that he is not as "limited" as it may appear, instead claiming that the appellant appears to be downplaying the severity of his condition. PFR File, Tab 1 at 16. However, the Board has regularly held that it will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *See Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). Further, the administrative judge made credibility determinations based on his observation of each witness's demeanor at the hearing, and we decline to disturb those findings on review. *See* ID at 14 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (identifying the factors that an administrative judge must consider in making credibility determinations)); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (concluding that the Board generally must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

Throughout its petition for review, the agency also argues that the appellant did not identify specific reasonable and effective accommodations that would enable him to perform installation and construction duties. *See* PFR File, Tab 1 at 22-23. In the initial decision, the administrative judge discussed that Dr. B.G. suggested in his response to the agency's April 6, 2020 list that, for those tasks the appellant needed an accommodation, the appellant could take frequent rests, use assistive devices, and use the assistance of other people on the jobsite. ID at

37; IAF, Tab 10 at 45. Although the agency claims that "assistive devices" is vague, the appellant did in fact testify at the hearing that this could include a dolly, a forklift, or a puller of some sort. HT-2 at 155 (testimony of the appellant). The administrative judge also found that job modification is a viable accommodation because ETs work in crews with varying assignments. ID at 38. We note that the Board has held that an agency is not required to modify or eliminate duties that are an essential function of the position. *Johnson v. U.S. Postal Service,* 120 M.S.P.R. 87, ¶ 10 (2013). Here, however, as the administrative judge found, R.N. testified that projects vary, that he tries to utilize the skills of his employees accordingly, and that if an employee cannot do a particular type of task, the agency can and does assign it to others. ID at 27; HT-2 at 31-32 (testimony of R.N.). The agency has not persuaded us to disturb this conclusion. Moreover, the agency has not established that the administrative judge erred in concluding that it did not meet its burden in proving its charge.

We agree with the administrative judge's conclusions as to the appellant's affirmative defenses.

Below, the appellant presented a disability discrimination claim based on the theory of a failure to accommodate. IAF, Tab 21 at 6, Tab 43 at 2-3. The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act, which has incorporated the standards of the ADA as amended by the ADAAA. *Haas,* 2022 MSPB 36, ¶ 28. Under the relevant provisions, it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." *Id.*; 42 U.S.C. § 12112(a). To prove disability discrimination based on a failure to accommodate, an employee must show that (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army,* 121 M.S.P.R. 189, ¶ 13 (2014). A qualified individual

with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without accommodation. *Haas*, 2022 MSPB 36, ¶ 28; 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m). An agency is required to provide reasonable accommodation to an otherwise qualified individual with a disability, unless the agency can show that doing so would cause an undue hardship on its business operations. 42 U.S.C. § 12112(b)(5); *Haas*, 2022 MSPB 36, ¶ 28; *Clemens*, 120 M.S.P.R. 616, ¶ 10. Once an employee informs the agency that he requires an accommodation, the agency must engage in an interactive process to determine an appropriate accommodation. *Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013). "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, appendix, § 1630.9.

In the initial decision, the administrative judge concluded that the appellant proved his claim of disability discrimination based on a denial of a reasonable accommodation because the administrative judge found that the appellant is able to perform the essential functions of the 802 ET position as established in this appeal, and thus that he is a qualified individual with a disability, because the agency did not provide the appellant with an accommodation as it erroneously determined he could not perform the essential functions of the position, and because the agency did not show that the accommodations in question would create an undue hardship. ID at 41. On review, the agency does not dispute that the appellant is an individual with a disability but argues that the administrative judge erred in finding that the appellant is a qualified individual with a disability, or that he can perform the essential functions of the 802 ET position with or without accommodations. PFR File, Tab 1 at 17-21. However, as discussed above, we agree with the administrative judge's analysis as to the essential functions of the 802 ET position and that the appellant can perform many of those functions both with and without accommodations.

The agency also argues that the administrative judge disregarded the fact that the appellant did not properly engage in the interactive process in this case. PFR File, Tab 1 at 21-24. Courts have generally required both parties to engage in the interactive process in good faith. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000); *Collins v. U.S. Postal Service*, 100 M.S.P.R. 332, ¶ 11 (2005). Here, we do not agree that the appellant failed to engage in the interactive process in good faith. The appellant promptly provided the agency with additional medical information on the nature of his disability on multiple occasions and he indicated his belief as to the essential functions of his position, although maybe misguided, and his interest in finding a reasonable accommodation. To this end, he told W.G. that he could do installation and construction work with an accommodation. IAF, Tab 10 at 21-22. Further, the appellant's physician, Dr. B.G., immediately responded to the agency's April 6, 2020 request to better understand the appellant's physical limitations, reviewing more than 80 alleged essential functions to determine whether each individual task was something that the appellant could perform. *Id.* at 45-52.

Although the agency contends that the appellant did not offer any indication as to what accommodations he might need to perform the specific duties in the April 6, 2020 list, including installation and construction duties, Dr. B.G. specifically stated that the accommodations could include frequent rests, appropriate assisting devices, and other people on the same jobsite. *Id.* at 45. While, as discussed above, the agency insists "appropriate assisting devices" is vague, the appellant testified that this could include a dolly, a forklift, or a puller of some sort, but that it would be project and task specific. HT-2 at 155 (testimony of the appellant). We do not find these suggested accommodations unreasonable. We do agree with the agency that the appellant made matters more difficult in this case by not directly responding to M.R.'s conclusion that, based on Dr. B.G.'s annotations, it was "clear" that the appellant was unable to perform the essential functions as detailed in the April 6, 2020 list and thus that M.R.

would start the reassignment process. *See* PFR File, Tab 1 at 21-22; IAF, Tab 10 at 60. However, M.R.'s response ignored the fact that Dr. B.G. indicated that the appellant *could* perform many of the alleged essential functions and that he provided proposed reasonable accommodations. Continuing the interactive process would have been the opportunity to explore the proposed reasonable accommodations further. The agency claims on review that the purpose of the April 6, 2020 list was to identify the types of things the appellant could do and to find an accommodation, and that is exactly what the appellant's response from Dr. B.G. does. *See* PFR File, Tab 1 at 19. Consequently, the agency's arguments have not persuaded us that the administrative judge erred in finding that the appellant proved his claim of disability discrimination based on failure to provide a reasonable accommodation.

Below, the appellant also alleged that the agency retaliated against him for requesting a reasonable accommodation and that it engaged in disparate treatment disability discrimination. IAF, Tab 43 at 2-3; ID at 40. With regard to the first claim, the appellant argued that his second-level supervisor, S.H., and his first-level supervisors, F.C. and then M.R., made his job difficult and wanted to get rid of him after he refused to go to Adak Island and after he asked for accommodation. ID at 42-45. The administrative judge found that the appellant failed to prove this claim because all three witnesses testified that neither S.H. nor F.C. were involved in the decision making regarding the appellant's removal, the appellant did not establish that S.H. influenced M.R. at all in issuing the decision, and there was no direct evidence, comparator evidence, or any other indications in the record that M.R. expressed hostility towards the appellant's reasonable accommodation request. ID at 43-45. The administrative judge explained that although M.R.'s April 6, 2020 list was "over-inclusive" and "made it almost certain that the appellant could not perform what the agency deemed the essential functions," he found M.R.'s approach genuinely erroneous and not an effort to retaliate against the appellant for requesting a reasonable

accommodation. ID at 45. In his cross petition for review, the appellant largely reargues his version of the facts leading to the removal decision, disputes the testimony of several witnesses and the administrative judge's credibility determinations, and reargues that S.H. was involved in his removal. PFR File, Tab 3 at 19-27. However, merely rearguing factual issues raised and properly resolved by the administrative judge below does not establish a basis for review. *Broughton*, 33 M.S.P.R. at 359 (1987); *see also Haebe*, 288 F.3d at 1301.

In his cross petition, the appellant also briefly discusses his claim of disparate treatment disability discrimination. PFR File, Tab 3 at 27. He asserts that "[o]thers not in his protected class" were assigned duties that did not involve intensive labor; specifically, J.W. and M.L. *Id.* However, the administrative judge discussed J.W. and found that although J.W. spent some time developing software for the agency, he is now doing installation and construction work and is thus not a good comparator and does not support the appellant's claim. ID at 46. With regard to the appellant's claim as to M.L., we decline to consider this argument that the appellant submits for the first time on review because he has not shown that it is based on new and material evidence not previously available despite his due diligence. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).

The agency's remaining arguments provide no basis for disturbing the initial decision.

On review, the agency also contends that even if the Board disagrees with its above arguments, the Board should reverse the initial decision and reopen the proceedings. PFR File, Tab 1 at 24-27. In this regard, the agency first argues that the administrative judge erred in finding that the appellant is medically capable of performing the essential functions of the 802 ET position without allowing testimony from its Regional Flight Surgeon, Dr. M.D. *Id.* at 25. The agency explains that it did not call Dr. M.D. as an expert witness as to its determination that the appellant was medically unable to perform the essential

functions of his position because the appellant stated throughout this case that he was only challenging the agency's determination that the essential functions of the 802 ET position include more than COR duties and not its determination that he was medically unable to perform the tasks it identified as essential functions, including installation and construction duties. *Id.* at 11, 13, 24-25; *see also* IAF, Tabs 19, 20. The agency alleges that the only discussion of accommodations that would allow the appellant to perform installation and construction duties resulted from the administrative judge's own questioning. *Id.* at 13, 25. We find the agency's assertions unavailing. Although the appellant apparently indicated that he did not plan to challenge the agency's determination that he was medically unable to perform the functions it identified in its April 6, 2020 list, it was the agency's burden to prove its charge and whether the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *See Haas*, 2022 MSPB 36, ¶¶ 15, 20. Additionally, while the agency seems to take issue with the administrative judge's questioning of the witnesses, the Board's regulations provide an administrative judge with wide discretion to regulate the course of a hearing. 5 C.F.R. § 1201.41(b)(6). Furthermore, as discussed above, the appellant addressed the issue of what accommodations would allow him to perform installation and construction work during the interactive process.

Similarly, the agency also contends that the administrative judge erred in finding that the "modified" installation and construction position constitutes a full-time position and effective accommodation without the testimony of the 802 ET manager, R.N. PFR File, Tab 1 at 26. The agency asserts that because the appellant "did not raise as a potential accommodation the modified position the AJ ultimately crafted," it did not elicit testimony from R.N. as to whether a position that consisted of COR work, Complex work, and some installation and construction tasks could "even constitute a full-time position" or whether this would warrant sending the appellant to construction projects. *Id.* However, as

explained above, we disagree with the agency's characterization of the initial decision as creating a "modified" position. The agency's April 6, 2020 list, which it argued constitutes the essential functions of the 802 ET position and on which it based its charge, includes installation and construction work, COR work, and work at the Complex. Despite this, the administrative judge properly recognized that the position involves mostly installation and construction work. Whether an individual can perform COR and Complex work is *part of* the analysis as to whether they can perform the essential functions of the 802 ET position. The agency also claims that the initial decision "effectively requires" it to reinstate the appellant to a "newly-crafted position not currently performed by any other 802 ET" and, as a practical matter, means that the agency would likely have to reinstate him to a permanent position at the Complex, which he previously rejected. PFR File, Tab 1 at 26. But again, the agency's argument ignores the fact that the administrative judge recognized that 802 ETs mostly perform installation and construction work and that the administrative judge found that the appellant can perform some of this work with accommodations. The initial decision does not require the agency to effectively reinstate the appellant to the Complex. Therefore, the agency's assertions are unpersuasive.

Accordingly, we affirm the initial decision.

## ORDER

We ORDER the agency to CANCEL the removal and to retroactively restore the appellant effective December 22, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's

efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of

the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must <u>receive</u> your petition for

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Jennifer Everling*

_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

   Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

   NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

   The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

   If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.